**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

JAMES HUTTS,                                                                          PLAINTIFF
ADC #116473

v.                                          5:14CV00269-KGB-JTK

WENDY KELLEY, et al.                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge

Kristine G. Baker.   Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.   If the

objection is to a factual finding, specifically identify that finding and the evidence that supports your

objection.   An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.   The copy will be furnished to the opposing party.   Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a

hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District

1

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I.    Introduction

Plaintiff James Hutts is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC).  He filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs, together with a state law medical malpractice claim.  Plaintiff claims Defendants failed to provide adequate medications for various medical conditions and failed to timely re-order medications prescribed to him.  Plaintiff voluntarily dismissed his claims against Defendants Kelley and Griffin on April 28, 2015 (Doc. No. 61).  In addition, Defendant Humphrey, who was added in a supplement to his complaint (Doc. No. 7), has never been served.[1]  Plaintiff asks for monetary and injunctive relief from the remaining Defendants.

This matter is before the Court on Defendants' Motion for Summary Judgment, Statement of Facts, and Brief in Support (Doc. Nos. 64-66).  Plaintiff filed an Answer to the Motion, Brief in Support, and Statement of Disputed Facts (Doc. Nos. 72-74), and Defendants filed a Reply and

---

[1]Fed.R.Civ.P. 4(m) provides that a defendant be served within 120 after the complaint is filed.

Statement of Facts (Doc. Nos. 75-76).

## II.    Plaintiff's Complaint

Plaintiff complains that Defendants failed to prescribe, and he failed to receive, adequate medications from April 2, 2010, until August, 2013.  He names as Defendants Nurses Connie Hubbard, Genia Snyder, and Amanda Watt; Dr. Ojiuko Iko; Health Services Administrators Jennifer McBride-Andrews and Deborah York; and medical employee Donna Gordon-Buie.

## III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.    Statute of Limitations

Initially, Defendants state that all Plaintiff's allegations prior to July 9, 2011, should be

dismissed, as barred by the three-year statute of limitations applicable to claims filed pursuant to 42 U.S.C. § 1983. Although Plaintiff claims that his allegations represent a continuous course of action by Defendants, the Court finds that the incidents and Defendants complained about are sufficiently separate to justify application of the limitations statute.

In Wilson v. Garcia, 471 U.S. 261 (1985), superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383-5 (2004), the United States Supreme Court concluded that the most appropriate statute of limitations for all actions filed pursuant to 42 U.S.C. § 1983 is the personal injury statute of limitations of the state whose law is to be applied. In Arkansas, that statute is the three-year statute of limitations set forth in ARK. CODE ANN. §16-56-105. See Miller v. Norris, 247 F.3d 736, 739 (8th Cir. 2001), where the court applied Arkansas' three-year statute of limitation to an action filed pursuant to 42 U.S.C. § 1983. Therefore, since Plaintiff filed this action on July 9, 2014, the statute bars claims that occurred prior to July 9, 2011.

**B.     Voluntary Dismissal - Defendants Gordon-Buie, Snyder, and Watt**

Defendants ask the Court to dismiss these three Defendants, based on Plaintiff's statements in his deposition, taken on April 24, 2015, that he wished to dismiss his claims against them.[2] Plaintiff claims that he has no recollection of that deposition due to a brain injury he suffered in December, 2014, and objects to their dismissal.

Defendants note that they ensured Plaintiff was of sound mind prior to proceeding with his deposition testimony, and refer to the following excerpts in support:

Q.      ...Now, Mr. Hutts, we attempted to take your deposition a few weeks ago, and we

---

[2]Defendants also note that the first attempt to take Plaintiff's deposition, on March 18, 2015, was cancelled because Plaintiff stated he could not proceed due to a migraine headache. (Doc. No. 76-1)

called the court because you had a migraine headache that day; is that right?

A.     A migraine and a few other things that was just kicking in, yes.

....

Q.     ...first I want to establish that you're comfortable going forward with the deposition today?

A.     Yes, sir.

....

Q.     ...I want to let you know that this process is probably going to take a little while today.  Are you able to go forward and stay here for several hours and do this?

A.     Yes sir.  I do have to go take medication.  If you can get one of these guys to put me to the front of the line, it won't take but 15 minutes at the max.

....

Q.     Well, at 2:00 if you need to take a little break – or just before that, that's fine.  And I also wanted to tell you if you need to take a break to go to the bathroom, something like that – I' m not trying to make this a marathon by any means, but we've got to cover this material.  This is my second shot at it and I would like to get it done today.

A.     That's fine.

....

Q.     The other thing that comes up sometimes in depositions – and it did the last time when I tried to depose you was, witnesses have reasons that they don't feel like they can participate in the process, or after the testimony is given and when we weeks or months from now are at trial, they will say, "Well, I shouldn't be held to that testimony," and give some sort of excuse.
The excuses I've heard in the past are that I didn't get enough sleep the night before, so I was loopy and didn't understand the process very well, or that I was on high-powered pain medication, or that – and that made me loopy, or I was in such physical pain at the time that I couldn't participate.
Now, I think the last group might have been you last time.  That was what you told the court, that you had a migraine and didn't feel like you could go forward.  I want to make sure that there's no reason you can't go forward today.  So can you think of any reason, here today, that you can't provide me with truthful testimony?

A.      I am on medication.  It is not strong.  It gives me cotton mouth, but it does not hinder
         me.  I have no problem with continuing.

(Doc. No. 65-5, pp. 12-16)

Later, in Plaintiff's deposition, the following dialogues took place with respect to Defendants

Gordon-Buie, Snyder, and Watt:

Q.      Do you want to keep pursuing this claim against Ms. Donna Gordon?  And I don't
         know if you've identified a medication that we're talking about – any missed dose.

A.      It wasn't with her.

Q.      If it's not with her, why are we suing her in federal court?....

A.      Agreed.

Q.      Do you want to dismiss Ms. Gordon?

A.      We will.

....

Q.      Is there any reason else we should talk about Ms. Gordon today if we're going to get
         her dismissed?

A.      No.

(Id., p. 115)

Q.      So if you had to summarize your lawsuit against Ms. Snyder, what would you say?

A.      The only thing you could say was that she said she was going to order the meds, but
         that's not good enough.  That's not even a – you can go home, Ms. Snyder.

Q.      Do you want me to include Ms. Snyder?

A.      Yes.

Q.      So right now we got Snyder and Buie.  We're holding on to Ms. York, right?  Is that
         right?

A.      Yes

Q.      York's in, Snyder and Buie – Gordon are out.  Agree to voluntarily dismiss Ms. Snyder?

A.      Yes.

(Id., pp. 122-123)

Q.      Is there anything else we need to talk about with Ms. Watt?  Any other reasons you've sued her?

A.      Tell Amanda Watt to go home.

Q.      Are you sure?

....

Q.      So are you comfortable dismissing Ms. Watt from this case voluntarily?

A.      Yes.

Q.      I'm going to include Ms. Watt, Ms. Gordon, and Ms. Snyder, is that right, on a motion to voluntarily dismiss?

A.      Correct.

(Id., p. 133)

Based on all these statements in Plaintiff's deposition testimony, Defendants Gordon-Buie, Snyder, and Watt ask to be dismissed.  They further state that despite Plaintiff's present claim that he has no memory of the deposition or his dismissal of these parties, he should not be able to submit a subsequent affidavit contradicting his own prior sworn testimony, as this defeats the usefulness of summary judgment to screen out sham issues of fact.  See City of St. Joseph v. Southwestern Bell Telephone, 439 F.3d 468, 476 (8th Cir. 2006), citing Camfield Tires, Inc. v. Michelin Tire Co., 719 F.2d 1361, 1362-1366 (t8h Cir. 1983).[3]

_____

[3]Plaintiff claims in his Summary Judgment Response that he suffered a significant brain injury in December, 2014, which has resulted in a loss of some memory.  Although this alleged

As noted by Defendants, the court in <u>Camfield</u> found that an affidavit filed by the plaintiff in opposition to a motion for summary judgment which directly contradicted the plaintiff's previous testimony, was insufficient to create genuine issue of material fact under FED.R.CIV.P. 56. 719 F.2d at 1365. In following this decision, the court in <u>City of St. Joseph</u>, held, "while summary judgment 'is to be reserved for those cases in which there is no genuine material issue of fact for determination,' if 'testimony under oath ... can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment....No party should be allowed to create 'issues of credibility' by contradicting his own previous testimony.'" 439 F.3d 468, 475 (8th Cir. 2006) (quoting <u>Camfield</u>, 719 F.2d at 1365-6).

In this particular case, although Plaintiff states he does not remember his deposition, he does not challenge Defendants' entire summary judgment motion on that basis, but rather, this limited portion in which he agreed to dismiss three of the Defendants. In addition, according to undisputed medical evidence, Plaintiff's records show that CT and MRI tests which were conducted in December, 2014, were normal and showed no signs of stroke. Plaintiff's deposition was taken in April, 2015, and he has not alleged, prior to this time, that the circumstances surrounding the deposition were out of the ordinary. Therefore, the Court concludes as a matter of law that Plaintiff dismissed Defendants Gordon-Buie, Snyder, and Watt during his deposition testimony.

## C.    Exhaustion

The remaining Defendants ask the Court to dismiss some of Plaintiff's claims against them,

---

brain injury is not a subject of the present litigation, Defendants submit Plaintiff's medical records to show that he was taken to University of Arkansas for Medical Sciences (UAMS) on December 30, 2014, to be evaluated, and that a CT scan and MRI which were performed showed normal results. (Doc. No. 76-2, pp. 3-18) In addition, Plaintiff refused to attend neurology appointments on April 27, 2015, and July 27, 2015 (Id., pp. 25, 29).

based on his failure to exhaust his administrative remedies, as required by the Prison Litigation

Reform Act (PLRA), 42 U.S.C. §1997e, and the ADC grievance policies in effect during the time

periods at issue, Administrative Directives (AD) 10-32, 12-16, 14-16 (Doc. Nos. 65-2, 65-3, 65-4).

These policies require an inmate to submit a grievance form within fifteen days after the occurrence

of the incident, to be specific as to the substance of the issue, including the "date, place, personnel

involved or witnesses," and to appeal to the Deputy Director for Health and Correctional Programs

to complete the process.  (Id.)  Defendants rely on the grievances provided by Plaintiff during the

discovery process, and ask that all unexhausted issues be dismissed.[4]

        In response, Plaintiff states he exhausted all available remedies as to each and every

Defendant, and claims that if he did not appeal, it was because an appeal was not available, and if

he did not specifically name a Defendant in his grievance, it was because he was not able to identify

that person.  In addition, although Defendants provide proof that Plaintiff waived several of his

grievances upon the resolution of the issue, Plaintiff claims the waivers were obtained improperly

and under duress.

        According to the PLRA,

                No action shall be brought with respect to prison conditions under
                section 1983 of this title, or any other Federal law, by a prisoner
                confined in any jail, prison, or other correctional facility until such
                administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813

(E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that

administrative remedies be exhausted prior to the filing of a lawsuit.  In Booth v. Churner, the United

---

        [4]Defendants attach these grievances as Exhibit F to their Statement of Facts (Doc. No. 65-7), and detail each in their brief in support of their Motion (Doc. No. 66).

States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  532 U.S. 731, 741 (2001).  In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.  Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)).  In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory."  340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original).   Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  549 U.S. 199, 218 (2007).

In Burns v. Eaton, the Eighth Circuit held that an exhausted grievance which named one officer involved in a pepper spray incident did not cover the plaintiff's allegations against a second officer named in his complaint, when the grievance did not name the second officer and did not include a description of his allegedly-unlawful actions. The Court stated, "this was not a case where 'prison officials decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits.'" 752 F.2d 1136, 1141 (quoting Reed-Bey v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010)).

In this case, the ADC grievance policies in effect clearly instructed inmates to "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place,

personnel involved or witnesses, and how the policy or incident affected the inmate..." (Doc. Nos. 65-2, p. 5; 65-3, p. 5; 65-4, pp. 5-6)  The Court has reviewed the grievances presented by the parties, and finds that the following grievances were exhausted as to the following Defendants.

       1)    Defendant McBride-Andrews

* VU 11-01100 - filed November 2, 2011 - Plaintiff complained that nurses failed to respond to several grievances he filed about the belated renewal of prescriptions.  Although he did not specifically name anyone in the grievance, in his appeal he complained that Defendant McBride's response did not adequately address the issue grieved.  The appeal found that he was not specific about the complaints in his grievance, and that the response appropriately noted the dates Plaintiff was seen by medical personnel.  (Doc. No. 65-7, pp. 15-18)

* VU 11-1269 - filed December 16, 2011 - Plaintiff complained that he did not receive his medications and that Defendant McBride refused to address this matter with him.  The appeal noted that there was a delay in Plaintiff receiving some of his medications in late December, 2011, and early January, 2012, and that the delay was due to a change in pharmacy vendors.  (Doc. No. 65-7, pp. 37-40)

* VU 11-1270 - filed December 16, 2011 - Plaintiff complained that Ms. McBride made false statements in grievance responses.  The appeal found that McBride failed to address one of two issues raised by Plaintiff, but that the issue was later resolved, and that McBride inadvertently duplicated a response from another grievance.  (Doc. No. 65-7, pp. 41-44)

* VU 12-0355 - filed February 16, 2012 - Plaintiff complained that his prescription for Verapamil (blood pressure medication) had expired and that the infirmary failed to order it prior to its expiration.  He named McBride as having told him he would not have to worry about medications

ordered late.  The appeal found that he was issued thirty tablets on January 18 and should not have

run out until February 15, that the order was renewed, and he was issued thirty tablets on February

21, May 1, and May 29.  Therefore, Plaintiff did have a lapse between February 16 and February

21, 2012.  (Doc. No. 65-7, pp. 51-54)

    * VU 12-0803 - filed April 16, 2012 - Plaintiff complained McBride, Dr. Iko, C. Hubbard,

and unknown Jane Does were responsible for his failure to receive several medications.  The appeal

found that there was a delay in Plaintiff's receipt of some of his medications.  (Doc. No. 65-7, pp.

67-70)

    * VU 12-1730 - filed September 13, 2012 - Plaintiff complained he was out of Prilosec for

eleven days and that on September 7, Defendant McBride gave him twelve tablets of Zantac and told

him the Prilosec was reordered.  The appeal found that Plaintiff also was prescribed Omeprazole on

August 1, 2012, and that he was being treated for his GERD symptoms.  Doc. No. 65-7, pp. 96-99.

    2)    Defendant Iko

    * VU 12-0880 - filed April 27, 2012 - Plaintiff complained that Iko failed to timely review

with him a blood test which was dated December 22, 2011.  The appeal found that Plaintiff saw Iko

on January 2012 for chronic care, at which time the lab results were documented.  Iko also saw

Plaintiff in April, July, and August.  (Doc. No. 65-7, pp. 74-77)

    * VU 12-1730 - filed September 13, 2012 (see above)

    3)    Defendant York

    * VU 13-0233 - filed February 27, 2013 - Plaintiff complained he ran out of his blood

pressure medication (Verapamil) and that it was the fourth time in seventeen days that one of his

medications had run out.  The issue was reported to York.  The appeal noted that the medical

department was working on passing out on-person medications and noted that while Plaintiff received the medication on April 3, he did not receive it again until May 2. (Doc. No. 65-7, pp. 104-106)

        4)     Defendant Hubbard

*VU11-0818 - filed August 25, 2011 - Plaintiff complained that his migraine and knee medications were not timely ordered and that he did not see Hubbard as promised. The appeal noted that he was seen on August 25, 2011, and September 12, 2011, that the medication wa ordered as needed, and that refills needed to be requested. (Doc. No. 65-7, pp. 7-10)

* VU 11-0819 - filed August 11, 2011 - Plaintiff complained that he notified Hubbard that he had been without blood pressure medication for over seven weeks. The appeal noted that Plaintiff's medication was delayed, but that he received sixty pills on August 13, 2011. (Doc. No. 65-7, pp. 11-14)

* VU 11-1269 - filed December 16, 2011 - Plaintiff complained about not timely receiving migraine medications even though Hubbard told him the medications were not discontinued. The appeal noted a recent change of pharmacy venders and subsequent delay in the receipt of medications by inmates. (Doc. No. 65-7, pp. 37-40)

* VU 12-0583 - filed March 9, 2012 - Plaintiff complained that his migraine medication (Neurontin) expired. Plaintiff stated in his appeal that during a follow-up with Hubbard on April 18, 2012, she told him he was only there for knee pain and nothing else. The appeal noted that the Neurontin was not approved by the pharmacy and that Hubbard ordered another medication on March 17, 2012, but that the pharmacy never received a copy of an approved non-formulary form. Plaintiff received doses of the second medication on March 18-21, March 24-26, March 29, March

31, April 1, and April 3.  (Doc. No. 65-7, pp 63-66)

&ast; VU 12-0803 - filed April 16, 2012 - Plaintiff complained McBride, Dr. Iko, C. Hubbard, and unknown Jane Does were responsible for his failure to receive several medications.  The appeal found that there was a delay in Plaintiff's receipt of some of his medications.  (Doc. No. 65-7, pp. 67-70)

&ast; VU 12-1073 - filed May 24, 2012 - Plaintiff complained that Hubbard ordered Tegretol on May 21, 2012, but that the pill window nurse told him it had not been ordered.  The appeal noted that the medication was approved on May 22, 2012, and received on May 25, 2012, when Plaintiff received his first dose.  (Doc. No. 65-7, pp. 86-89)

Although Plaintiff claims that remedies were unavailable with respect to any of his unexhausted grievances, he offers no specific facts with respect to any of those grievances to support this claim.  In addition, the Court does not find credible his argument that he did not have access to a listing of personnel from which to discover individuals' names, because it is apparent from the volume of the grievances filed against numerous medical individuals that he was aware of the Defendants' identities and their involvement with his medical care and treatment.  Finally, Plaintiff does not explain why his signature appears on several waivers of grievances, other than to deny that he waived.  (Doc. No. 65-7, pp. 45, 90, 92, 94)

**D.     Eighth Amendment Claims**

Defendants ask the Court to dismiss these claims against them based on Plaintiff's failure to provide proof that they acted with deliberate indifference to his serious medical needs, and also on Plaintiff's failure to provide proof of any harm caused by delays in providing medications.  In support, they provide the affidavit of Dr. Robert Floss, former Regional Medical Director of

14

Corizon, Inc., and current Associate Regional Medical Director of Correct Care Solutions, the medical care provider for ADC inmates. (Doc. No. 65-13) Dr. Floss reviewed Plaintiff's medical records from June 1, 2011, to July 9, 2014, and detailed the care provided to Plaintiff by Defendants during that time. (Id.) He concluded that the care and treatment provided to Plaintiff by Defendants was appropriate and satisfactory for his complaints, that Plaintiff was not damaged as a result of any missed medications, and that he failed to avail himself of the health services request form in order to prevent his medication prescriptions from lapsing. (Id.)

Plaintiff claims his Complaint is proof of years of deliberate indifference to his medical needs, as evidenced by Defendants' failure to provide timely medication to prevent life-threatening conditions. He also states that the current record cannot resolve this issue at the summary judgment stage. He claims he suffered a brain injury in December, 2014, which was caused by missed hypertension medications and improper treatment of his migraine headaches.[5]

To support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need(s). Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). In addition, an inmate who

---

[5]As noted earlier, the December 2014 incident is not an issue raised in his Complaint.

15

complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds) (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).  "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

Having reviewed the Plaintiff's medical records and other submissions by the parties, the Court concludes as a matter of law that Defendants did not treat Plaintiff with deliberate indifference, and that he provides no evidence to support a finding of harm due to delays in providing medications.  The Court addresses Plaintiff's claims against each Defendant as follows:

        1)        Defendant McBride-Andrews

Plaintiff's exhausted claims against Defendant McBride are that she failed to properly address his medical concerns in her grievance responses, that she falsely responded to his grievances, that she was responsible for his failure to receive needed blood pressure medications in February, 2011, and that she was responsible for missed medications in December, 2011-January, 2012, and April, 2012.

With respect to his grievance claims against Defendant McBride, Plaintiff fails to state a constitutional claim for relief.  A "[prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates....it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (quoting Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982)).

Plaintiff "does not have a federal claim regarding how his grievances were processed, investigated, or responded to, even if they were not done by the appropriate personnel or in accord with the policies." Edgar v. Crawford, No. 08-4279-CV-C-SOW, 2009 WL 3835265, *3 (W.D.Mo. 2009).

With respect to the missed medications claims, Plaintiff complained on December 16, 2011 that he was out of Indomethacin, fiber, artificial tears, Flonase, and Triamterence/HCTZ for six days. His medical records show that Defendant Hubbard examined him on December 7, 2011, for complaints of headaches, and that she prescribe Ciprofloxacin for an upper respiratory infection. (Doc. No. 65-9, p. 87) She changed Plaintiff's Gabapentin prescription, ordered labs to address Plaintiff's high cholesterol, and reordered Indocin and fiber. (Id., p. 88) Labs were conducted on December 14, 2011, and Defendant Iko noted Plaintiff's results on December 22, 2011. (Id., pp. 91-95) Plaintiff submitted a health services request form on December 26, 2011, complaining about pain and lack of proper medications. (Id., p. 96)   He was seen by Defendant Hubbard on January 2, 2012, and she addressed his complaints, including providing him with some medications which had expired. (Doc. No. 65-10, pp. 5-8)

According to the response to one of Plaintiff's grievances, during that time the pharmacy vendors changed, which caused a delay in medications. (Doc. No. 65-7, p. 37)  These medication problems were addressed as noted in Plaintiff's medical records, and he provides no evidence to support a finding that the delay was caused by deliberate indifference on the part of Defendant McBride.

Plaintiff also complained that his Verapamil prescription (blood pressure) expired on February 8, 2012.  According to the grievance response, Plaintiff's prescription was changed on January 9, 2012, and he was issued thirty tablets on January 18, 2012. (Doc. No. 65-7, p. 51) The

order was renewed on February 21, 2012, and Plaintiff was issued thirty tablets on February 21, 2012, May 1, 2012, and May 29, 2012.  (Id.)  (See also Doc. No. 65-10, pp. 29-30)

Plaintiff also complained Defendant McBride was responsible for missed medications in April, 2012.  His medical records show that prescriptions for fiber and Ranitidine were renewed on April 3, 2012 for 180 days, and that he was scheduled for a lab test.  (Doc. No. 65-10, p. 91) He was seen for knee pain on April 18, 2012, and for headaches on April 20, 2012 (Id., pp. 98-99).  He also saw Defendant Iko on April 23, 2012, as a result of abnormal labs and was prescribed Simvastatin (cholesterol) and educated about a cardiovascular diet.  (Id., p. 100) He was seen again on May 21, 2012, was prescribed Loratadine and Carbamazepine, and more labs were scheduled.  (Doc. No. 65-11, p. 10)

Finally, Plaintiff complained on September 13, 2012, that he was out of Prilosec for eleven days.  His medical records show that Defendant Iko ordered a number of medications on June 21, 2012, in order to address his GERD and H. Pylori problems.   (Doc. No. 65-11, pp. 29-30) Omeprazole was reordered on August 1 and September 19, 2012, and he was told he would not be prescribed both Omeprazole and Ranitidine together . (Id., pp. 54, 70) Plaintiff provides no evidence that Defendant McBride was responsible for any of these missed medications, or that she acted with deliberate indifference to his serious medical needs.  Therefore, the Court finds as a matter of law that Defendant McBride did not violate Plaintiff's Eighth Amendment rights.

2)      Defendant Iko

Plaintiff complained on April 17, 2012 that he received a notification from the infirmary to follow up concerning lab work conducted in December, 2011, and that Iko never followed up on that lab work.  According to his records, labs were ordered on December 7, 2011, and conducted on

December 14, 2011 (Doc. No. 65-9, pp. 88-94).  Hubbard saw Plaintiff on January 2, 2012 for follow-up care, and Iko followed up on January 9, 2012 (Id., pp. 8-10, 19-24) Therefore, Plaintiff provides no evidence that Iko failed to review his lab work with him, or that if he did, it was caused by deliberate indifference to his medical needs.

Plaintiff also complained about the missing Prilosec in September, 2012.  However, as noted above with respect to Defendant McBride, Plaintiff's medical records show that Iko attempted to treat Plaintiff for his reflux/GERD problems in the summer of 2012 by prescribing two-to-three different medications, but that as of September, 2012, Plaintiff was limited to the Omeprazole. Plaintiff does not provide evidence that this was due to deliberate indifference by Iko; rather, he appears to disagree with the type of treatment he received, which does not support a constitutional claim.  See Smith v. Marcantonio, 910 F.2d at 502.  Therefore, the Court finds as a matter of law that Defendant Iko did not violate Plaintiff's Eighth Amendment rights.

3)   Defendant York

Plaintiff admitted in his deposition testimony that he sued Defendant York because she was in charge of the infirmary.  (Doc. No. 65-5, p. 117)  However, respondeat superior is not an actionable theory of liability in § 1983 cases. See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994).  A supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation.  Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993).  In particular, the plaintiff must show that the supervisor knew about the conduct and facilitated it, approved it, condone it, or turned a blind eye to it.  Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).  See also Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997) ("Section 1983 liability cannot attach to a supervisor merely because a subordinate violated

someone's constitutional rights.")

In the one grievance Plaintiff exhausted as to Defendant York, he complained that he reported to her in March, 2013, that he was out of his prescriptions for omega 3 fatty acids and Verapamil. (Doc. No. 65-7, p 111) In her response, Defendant York noted that Plaintiff received his medication two days late, and apologized for the delay. (<u>Id</u>.) Plaintiff also did not disagree with that response in his appeal, but appealed in order to exhaust his grievance on that issue. (<u>Id</u>.) There is no evidence that York acted with deliberate indifference, or that the delay caused physical harm to Plaintiff. Therefore, the Court finds as a matter of law that Defendant York did not violate Plaintiff's Eighth Amendment rights.

### 4)    Defendant Hubbard

As noted above in the exhaustion section, Plaintiff grieved several instances against Defendant Hubbard, from August 12, 2011, through May 24, 2012. (Doc. No. 65-7) He complained about inadequate migraine headache and knee pain medications in August, 2011. According to his medical records, he was prescribed Indomethacin and Nortriptylene in July and August, 2011. (Doc. No. 65-9, p. 12) e reported to Hubbard on September 12, 2011 that he was out of some of his medications and still suffered knee pain. (Id., p. 27) ubbard noted that a MRI of the knee was negative, and then renewed several prescriptions with refills. (<u>Id</u>. pp. 27-32)

Plaintiff also complained in August, 2012, about missing blood pressure medication for seven weeks. Two days after he filed the grievance, he was issued sixty pills of his blood pressure medication to be kept on his person. In addition, according to Dr. Floss, as an Advanced Practice Nurse, Defendant Hubbard typically did not dispense oral medications. (Doc. No. 66, p. 24)

Another grievance Plaintiff filed and mentioned Hubbard was addressed earlier, with respect to Defendant McBride, and concerned medications Plaintiff ran out of in December, 2011. Again, the

grievance response noted the change in pharmacy vendors and that Plaintiff's problems were remedied. (Doc. No. 65-7, p. 37)

Plaintiff also mentioned Defendant Hubbard in the grievance he filed in April, 2012, complaining about being out of his migraine medications. (Id., p. 67) The response to the grievance, and Plaintiff's medical records, show that while Plaintiff did suffer a delay in receiving some of his medications, they were remedied. (Id.; Doc. No. 65-10, pp. 78-80) Plaintiff's medical records show that Defendant Hubbard saw him on March 17, 2012 and ordered Ibuprofen, Gabapentin, Ranitidine, andf Neurontin. (Doc. No. 65-10, p. 78-79) Hubbard also ordered prescriptions for fiber and Ranitidine on April 3, 2012. (Id., p. 91) She saw him on April 18, 2012 for knee pain and directed him to continue with prior medical treatment given, and saw him on May 21, 2012, for lab review, at which time she ordered Loratadine and Carbamazepine. (Id., p. 98; Doc. No. 65-11, p. 10).

Plaintiff complained on May 20, 2012, of difficulty in getting his migraine medications. (Doc. No. 65-7, p. 85) As noted above, Hubbard ordered Gabapentin on March 17,2012. However, that order was refused by the pharmacy vendor, and Plaintiff was issued Ibuprofen. (Doc. No. 65-7, p. 82) When Hubbard again saw Plaintiff on May 21, 2012, she requested he be given Tegretol, since the Gabatin was not approved. (Doc. No. 65-11, p. 10) Plaintiff complained on May 24, 2012, that the Tegretol was not ordered. However, the medical records show that the order was placed on May 21, 2012, approved on May 22, 2012, and issued to Plaintiff on May 25, 2012. (Id., pp. 19-21)

In summary, Plaintiff's records show that Defendant Hubbard continuously treated him and prescribed various medications for his conditions. Plaintiff provides absolutely no evidence that she acted with deliberate indifference or that any delays resulted in a detriment to his health. Rather, he appears to complain about the type of treatment, rather than a denial of treatment. In addition,

while the fact that Plaintiff's medications lapsed on many occasions may have been negligent, he does not provide evidence that it was due to deliberate indifference on the part of the Defendants, or due to his own failure to notify the infirmary that the medications had expired.  Therefore, the Court finds as a matter of law that Defendant Hubbard did not violate his Eighth Amendment rights.

###   E.     State Law Tort Claims

Given this Court's finding that Defendants did not violate Plaintiff's Eighth Amendment rights and that these claims against them should be dismissed, the Court declines to exercise jurisdiction over his state law claims against Defendants.  McLaurin v. Prater, 30 F.3d 982, 984-94 (8th Cir. 1994).

## IV.     Conclusion

IT IS, THEREFORE,  RECOMMENDED that:

1.      Defendants' Motion for Summary Judgment (Doc. No. 64) be GRANTED.

2.      Defendants Gordon-Buie, Snyder, and Watt, be DISMISSED without prejudice.

3.      Defendants Iko, Hubbard, McBride-Andrews, and York be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 15th day of October, 2015.

_____

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

22